**CORRECTED**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1204V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * <br> MEGAN MCDONALD, *as best friend of her daughter* M.G.M.,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                Respondent<br> * * * * * * * * * * * * * * * * * * * * * * * * * * * | TO BE PUBLISHED<br><br>Special Master Katherine E. Oler<br><br>Filed: June 23, 2021<br><br>Attorneys' Fees & Costs;<br>Reasonable Basis |

*Patricia A. Finn*, Patricia Finn, P.C., Nanuet, N.Y., for Petitioner.

*Mary E. Holmes*, U.S. Department of Justice, Washington, D.C., for Respondent.

### DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

      On August 14, 2018, Megan McDonald ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that her daughter ("M.G.M.") suffered from "neurologic injury, evidenced by her seizures" following the DTaP, HIB and Rotarix vaccines she received on June 24, 2015 and/or the DTaP, PCV and HIB vaccines she received on August 25, 2015. Pet., ECF No. 1. At the time, Petitioner was acting *pro se*. Ms. Finn was retained by Petitioner and substituted as counsel on March 22, 2019. ECF No. 12. On September 17, 2020,

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

Petitioner filed the instant Motion for attorneys' fees and costs, requesting $21,053.90 in fees and $558.65 in costs for a total of **$21,612.55**. Fees App. Ex 1 at 5, ECF No. 33.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application and award a total of **$14,243.68** in final attorneys' fees and costs.

I.      **Procedural History**

Petitioner filed a statement of completion on June 24, 2019. ECF No. 18. On August 27, 2019, Respondent filed a status report indicating that several medical records were still missing from the record. ECF No. 19. On September 3, 2019, Petitioner was ordered to file any outstanding records and an amended statement of completion. *See* Non-PDF Scheduling Order of September 3, 2019. On January 29, 2020, Petitioner filed the outstanding medical records and an amended statement of completion. Exs. 12-18, ECF Nos. 22-23.

Petitioner filed several medical records in support of her claim. Exs. 1-10, 12-18. Petitioner also filed an affidavit. Ex. 11.

On April 30, 2020, Respondent filed his Rule 4(c) report, indicating he believed that this case was "not appropriate for compensation under the terms of the Act." Resp.'s Rep. at 2, ECF No. 27. Respondent argued that (1) Petitioner had not established that her daughter was diagnosed with seizures; and (2), even if she had, Petitioner did not establish that her daughter's seizures occurred in a medically appropriate time frame following vaccination. *Id.* at 13-14.

On May 26, 2020, I held a status conference in this case. *See* Scheduling Order of May 27, 2020, ECF No. 28. I explained to Ms. Finn that the record did not establish that M.G.M. experienced seizures; further, there was no clear connection between M.G.M.'s alleged seizures and her development of headaches more than two years after vaccination. I stated that I found this temporal gap to be insurmountable. Because Petitioner did not establish a connection between M.G.M.'s shaking and her headaches, she had not provided proof of severity. I strongly recommended to Ms. Finn that the case be dismissed because Petitioner had no reasonable chance of prevailing on the petition. *Id.* at 1.

Petitioner filed a motion to voluntarily dismiss on June 23, 2020, indicating that "in these circumstances, to proceed further would be unreasonable and would waste the resources of the Court, the Respondent, and the Vaccine Program." Pet'r's Mot., ECF No. 29 at 1. Petitioner further indicated that she "understands that a decision by the Special Master dismissing her petition will result in a judgment against her and the she "has been advised that such a judgment will end all of her rights in the vaccine program." *Id.* at 2-3.

Petitioner filed this Motion for Attorneys' Fees and Costs on September 17, 2020. Fees App., ECF No. 33. On October 5, 2020, Respondent filed a response opposing the motion on the grounds that Petitioner had failed to establish a reasonable basis for the claim. Fees Resp., ECF No. 36. Petitioner filed a reply on October 27, 2020. Fees Reply, ECF No. 38.

The matter of final attorneys' fees and costs in this case is now ripe for a decision.

## II.    M.G.M.'s Relevant Medical History

M.G.M. was born on February 23, 2015. Ex. 1 at 1. She received DTaP vaccinations on April 24, 2015, June 24, 2015, and August 25, 2015. *Id.* She received Prevnar vaccinations on May 22, 2015, July 28, 2015 and August 25, 2015. *Id.* She also received Hib vaccinations on April 24, 2015, June 24, 2015, and August 25, 2015. *Id.*

On August 29, 2015, M.G.M. was seen at SV Pediatrics. Ex. 8 at 3. M.G.M. was reported to be "shaking x 7-10 seconds, whole body – eyes were closed as she was drinking. Mom pulled bottle out & she started crying for more." *Id.* M.G.M. was diagnosed with a "shaking episode → R/O seizure" and Petitioner was instructed to take M.G.M. to the emergency room if it repeated. *Id.* Her EEG at this visit was considered normal. Ex. 3 at 1.

On September 1, 2015, M.G.M. was seen by Dr. Shefali Karkare. Ex. 14 at 5. Dr. Karkare assessed that M.G.M. suffered "possible seizure though a shuddering spell/sleep myoclonus or reflux are in the differential." Ex. 7 at 3.

On September 24, 2015, M.G.M. was again seen at Stony Brook University Hospital for "seizure-like activity." Ex. 3 at 1. Dr. Tulka Narain described the episode as characterized with "stiff extended arms that shook for 5-6 seconds then patient fell asleep for about 10 min and was appear[ing] foggy upon awakening. The patient returned to baseline after about 15min." Dr. Narain noted that M.G.M. was up to date on her vaccinations and meeting her developmental milestones. *Id.* at 3. M.G.M. was given an EEG and instructed to follow up within 3-5 days. *Id.* at 4.

On September 27, 2015, M.G.M. was seen by Dr. Faiz Ahmed for a cough. Dr. Ahmed wrote that "Pt was brought to the hospital 3 days ago for 2 episodes of shaking, and seizures were ruled out."

On November 2, 2015,[3] M.G.M. was seen for an MRI at SV Pediatrics. Ex. 17 at 23. On the diagnosis line is written "seizure-like activity." *Id.*

On November 21, 2017, Dr. Nachman saw M.G.M. for a follow up regarding her possible seizures following her DTaP vaccination. Ex. 16 at 39. Regarding this visit, Dr. Nachman noted that:

> I do not believe that these seizures were specific to that vaccine. [W]hile we consider any reaction within 4 weeks of a vaccine to be possibly related, in the literature, all vaccine reported seizures occur with[in] 72 hours. [T]he interval between vaccine and seizure was outside that window. [I]t is possible that they were related to an intercurrent viral illness, but I have no evidence that this was investigated (either ruled in or ruled out).

*Id.*

---

[3] This procedure took place on either November 2, 2015 or October 29, 2015. The date of the procedure is listed as November 2, 2015, but the "date examined" is listed as October 29, 2015. Ex. 17 at 23.

3

On January 23, 2018, M.G.M. was seen by Dr. Ivan Pavkovic for headaches. Dr. Pavkovich noted in the medical history that M.G.M. was "seen previously in the neurology clinic due to seizure like activity that occurred after pertussis immunization." Ex. 12 at 10.

On April 23, 2018, Dr. Pavkovik wrote a letter indicating that he had again seen M.G.M. for headaches. He noted that she had "possible seizure after pertussis immunization" and the medical literature indicated that receipt of the DTaP vaccine "did not show an increased risk for seizures." Ex. 12 at 5.

On July 3, 2018, M.G.M. was seen for a follow up visit with Dr. Nachman for "seizure soon after receiving DTAP vaccine." Ex. 5 at 1. The notes from this visit indicate that M.G.M.'s blood tests "show good response to MMR, HepA, diphtheria, and tetanus vaccine, but poor response to pertussis vaccine." Ex. 5 at 1. At this visit, Dr. Nachman diagnosed M.G.M. with "other serum reaction due to vaccination." Ex. 16 at 26.

On the same day, Dr. Nachman wrote a letter on behalf of M.G.M., explaining that:

> M.G.M was seen on July 3, 2018. [S]he has documented responses to many of her vaccinations, including MMR, Hep A and tetanus. [S]he has a poor response to pertussis vaccine. [D]ue to seizures associated with DTAP, she will not be getting any additional pertussis vaccines.

Ex. 4 at 1.

On July 12, 2018, Dr. Pavkovic wrote a letter on behalf of M.G.M. stating that "M.G.M. is under my care for headaches. MR imaging of the brain was normal. She does have a past history of possible seizure activity at about 6 months." Ex. 6 at 1. Dr. Pavkovic further stated that "migraines and epilepsy do occur more commonly together during childhood. The exact relationship between these disorders is not known but there are likely common genetic factors that predispose to both disorders." *Id.*

### III. Petitioner's Affidavit

On January 29, 2020, Petitioner submitted an affidavit. Ex. 11. Petitioner stated that "Ever since M.G.M. was vaccinated on August 25, 2015, and experienced her seizures, she has never been the same. M.G.M. is often tired and irritable and appears to be in pain." *Id.* at 2. Petitioner further stated that "I have observed these episodes of head pain consistently which appear to be very painful for M.G.M. since the onset of the first seizure three days after vaccination on August 25, 2015." *Id.* Finally, Petitioner confirmed that M.G.M. continues to suffer from head pain today. *Id.*

### IV. Parties' Arguments

Respondent argues that Petitioner has failed to establish a reasonable basis for her claim and is not eligible for an award of attorneys' fees and costs. Fees Resp. at 6. Citing the Federal Circuit's decision in *Perreira*, Respondent argues that in a reasonable basis inquiry, "a court

4

should look not at the likelihood of success, but instead assess the feasibility of the claim, and [P]etitioner must offer more than an unsupported assertion that a vaccine caused an injury." *Id*. at 8 (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Respondent argues that prior to accepting a case, "an attorney should be able to distinguish a case that has reasonable underpinnings from one that does not." *Id*. at 5 (citing *Murphy v. Sec'y of Health & Hum. Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd,* 48 F.3d 1236 (Fed. Cir. 1995)). Respondent further points out that the evaluation of whether there is a reasonable basis for the claim must focus on whether there is evidentiary support set forth in the petition. *Id*. at 6 (citing *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017)).

Respondent argues that Petitioner's claim "lacked proof of diagnosis, severity, and causation," and therefore lacks reasonable basis. Fees Resp. at 6. Respondent further argues that "the evidence in the record does not establish that M.G.M. suffered a neurologic injury or that her two shaking episodes documented in 2015 were, in fact, seizures," and therefore "lacking objective evidence of any definable injury, petitioner's claims cannot be found to have reasonable basis." *Id.* at 7.

Petitioner replied to Respondent arguing that a reasonable basis did exist at the time the petition was filed. *See* Fees Reply. Petitioner points to medical records showing documentation recording M.G.M.'s seizure activity and a previous "poor response to pertussis vaccine, due to seizures associated with DTAP…". Fees Reply at 5. Petitioner also argues that the Petition cites to Dr. Nachman's July 3, 2018 letter which stated that M.G.M. was exempt from receiving any further pertussis." *Id.* at 4; *see also* Ex. 2 at 1.

V.   **Legal Standard**

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

A. **Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

B. **Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a

5

petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35

6

Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

### C. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

### VI. Discussion

#### A. Good Faith

Petitioner is entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not represented that they are contesting good faith in this matter. *See generally* Fees Resp. Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

#### B. Reasonable Basis

As noted above, the standard for establishing reasonable basis is lower than that required to prevail on a vaccine-injury claim. *Chuisano,* 116 Fed. Cl. 276 at 287. For the following reasons, I find that a reasonable basis existed for filing this petition.

7

M.G.M.'s medical records indicate that (1) she received the DTaP vaccine on August 25, 2015 and (2) she suffered from two "shaking" or "seizure-like" episodes shortly thereafter. *See* Exs. 1 and 3. The provider notes from one appointment following this visit indicate that that one of M.G.M.'s treating physicians contemplated a link between the DTaP vaccine and M.G.M.'s seizure-like activity. *See* Ex. 12 at 10 (M.G.M. was "seen previously in the neurology clinic due to seizure like activity that occurred after pertussis immunization."). Furthermore, Dr. Nachman exempted M.G.M. from further pertussis vaccines (Ex. 4 at 1) and Dr. Pavkovic suggested that a link may exist between M.G.M.'s past possible seizure activity and her current headaches. Ex. 6 at 1.

Respondent argued that "By the time Dr. Nachman provided the 2018 note, she had already acknowledged that a seizure diagnosis had been ruled out and determined that M.G.M.'s shaking episodes were not related to her vaccinations." Fees Resp. at 7, *citing* Ex. 16 at 37-39. First, it does not appear that Dr. Nachman noted that a seizure diagnosis was ruled out.[4] *See* Ex. 16 at 39 (Dr. Nachman indicating "I do not believe these seizures were specific to that vaccine").[5]

Additionally, Dr. Nachman wrote the July 3, 2018 letter <u>after</u> the visit cited by Respondent, which took place on November 21, 2017. In her letter dated July 3, 2018, Dr. Nachman specifically expressed her medical opinion that M.G.M. should not receive further pertussis vaccinations. *Id.* It is clear that the November 21, 2017 record from Dr. Nachman is at least partially inconsistent with the letter she wrote on July 3, 2018. Had Dr. Nachman drafted her letter exempting M.G.M. from pertussis vaccines before her November 21, 2017 visit with M.G.M., where she wrote "I do not believe these seizures were specific to that vaccine", I would likely have given the July 2018 letter less weight. As it stands, I have credited this exemption as some evidence that supports Petitioner's reasonable basis to file the petition.

M.G.M.'s medical records also include a letter from Dr. Ivan Pavkovic dated July 12, 2018. Ex. 6. Dr. Pavkovic stated that "M.G.M. is under my care for headaches. MR imaging of the brain was normal. She does have a past history of possible seizure activity at about 6 months. *Id.* at 1. Dr. Pavkovic further stated that "migraines and epilepsy do occur more commonly together during childhood. The exact relationship between these disorders is not known but there are likely common genetic factors that predispose to both disorders." *Id.* This letter at least contemplates a connection between M.G.M.'s headaches and her seizure-like activity.

---

[4] Although Respondent argues that M.G.M. suffered from "shaking episodes" rather than seizures (Fees Resp. at 7), several medical records at least contemplate the existence of seizures. *See, e.g.*, Ex. 8 at 3 (M.G.M. diagnosed with "shaking episode → R/O seizure"); Ex. 7 at 3 (M.G.M. diagnosed with "possible seizure though a shuddering spell/sleep myoclonus or reflux are in the differential.").

[5] In a single medical record from September 27, 2015, Dr. Faiz Ahmad wrote that "Pt was brought to the hospital 3 days ago for 2 episodes for shaking, and seizures were ruled out." Ex. 17 at 18. However, this record is contradicted by the several other medical records surrounding it. On September 24, 2015, Dr. Narian wrote that M.G.M. was brought to the hospital for "seizure-like activity." Ex. 3 at 4. And, on November 2, 2015, M.G.M. was seen for an MRI for "seizure-like activity." Further, it is unclear what led Dr. Ahmad to conclude that seizures were ruled out. The record does not provide an explanation. Accordingly, while the September 27, 2015 record does constitute some evidence that seizures were ruled out in M.G.M.'s case, there is other medical record evidence for the contrary proposition.

Finally, in Petitioner's affidavit, she stated that "Ever since M.G.M. was vaccinated on August 25, 2015, and experienced her seizures, she has never been the same. M.G.M. is often tired and irritable and appears to be in pain." Ex. 11 at 2. Petitioner further stated that "I have observed these episodes of head pain consistently which appear to be very painful for M.G.M. since the onset of the first seizure three days after vaccination on August 25, 2015." *Id.* I have considered this evidence in finding that a reasonable basis existed in this case. *See James Cornelius*, 984 F.3d at 1380 ("While lay opinions as to causation or medical diagnosis may be properly characterized as mere "subjective belief" when the witness is not competent to testify on those subjects, the same is not true for sworn testimony as to facts within the witness's personal knowledge, such as the receipt of a vaccine and the timing and severity of symptoms. … Indeed, for many medical symptoms or events—such as a headache and other pain, dizziness, nausea, and vomiting—the patient's or a parent's testimony may be the best, or only, direct evidence of their occurrence.").

In short, Dr. Nachman exempted M.G.M. from future pertussis vaccines. Petitioner stated in her affidavit that M.G.M. appeared to experience headaches beginning at the time M.G.M. suffered from her seizure-like activity shortly after receipt of the DTaP vaccine. When considered in conjunction with Dr. Pavkovic's letter, Petitioner has presented <u>some minimal evidence</u> that M.G.M.'s DTaP vaccination caused her seizure-like activity, which may have been associated with her headaches.

I find that the totality of the evidence outlined above, in combination with the reduced standard of proof required for establishing reasonable basis, is sufficient to provide Petitioner with a reasonable basis to file this petition.

## VII.    Attorneys' Fees

Petitioner requests a total of $21,053.90 in attorneys' fees. Fees App. at 1, ECF No. 33.

### A. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorney's experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

---

[6] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

Petitioner requests the following hourly rates for the attorney and paralegals who have worked on this matter to date:

| Name | 2018 | 2019 | 2020 |
|---|---|---|---|
| Patricia Finn | $396.00 | $405.00 | $422.00 |
| Paralegals | $153.00 | $156.00 | $163.00 |

The requested rates represent a substantial increase from what Ms. Finn has typically been awarded in previous cases. Although it appears as though Ms. Finn has not requested fees since 2019,[7] in 2018, Special Master Sanders reduced Ms. Finn's rate to $307.00 per hour for 2017, the lowest end of the *McCulloch* range for an attorney with her experience. *See Silver v. Sec'y of Health & Hum. Servs.*, No. 16-1019V, 2018 U.S. Claims LEXIS 1057 at *15 (Fed. Cl. Spec. Mstr. July 31, 2018). Ms. Finn asked for and received $352.00 per hour in 2018 in *Hill v. Sec'y of Health & Hum. Servs.*, No. 15-678V, 2018 U.S. Claims LEXIS 978 at *13 (Fed. Cl. Spec. Mstr. July 25, 2018).

In determining a reasonable hourly rate for Ms. Finn, I have considered her experience in the Vaccine program, her overall legal experience, the quality of the work performed, and her reputation in the legal community and the community at large. *McCulloch*, 2015 U.S. Claims LEXIS at *17. Ms. Finn has been practicing law since 2003 and has worked in the Vaccine Program since the same year. Fees App. at 15. It appears that Ms. Finn has not requested fees in any case since 2019, and between 2018 and 2019, submitted only three motions for fees. *Streeter v. Sec'y of Health & Hum. Servs.*, No. 18-138V, 2019 WL 7341596 (Fed. Cl. Spec. Mstr. Nov. 19, 2019); *Silver*, 2018 U.S. Claims LEXIS 1057; *Hill*, 2018 U.S. Claims LEXIS 978.

In this case, Ms. Finn was instrumental in leading the case to a speedy resolution. However, Ms. Finn did not need to file an expert report, filed ten medical records, and only participated in one status conference prior to dismissal of the case. I find that Ms. Finn is more appropriately compensated somewhere in the middle of the range for an attorney of her experience.

I therefore will award Ms. Finn $352.00 per hour in 2018 for attorney work, the same as she requested – and was awarded – in *Hill*. *McCulloch* suggests a raise of 3.7% for each year. I

---

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.
The 2020 Fee Schedule can be accessed at: http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[7] In 2019, Ms. Finn asked for and received attorneys' fees and costs in the amount of $29,301.89 in *Streeter v. Sec'y of Health & Hum. Servs.*, No. 18-0138V, 2019 WL 7341596. The decision awarding fees, however, does not include a breakdown of Ms. Finn's hours expended or the rate awarded.

therefore will award Ms. Finn $365.00 per hour in 2019, and $378.00 per hour in 2020 for attorney work.

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [are] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App., Tab 2. A reduction in the numbers of hours billed by Ms. Finn is appropriate, as some of the time billed by Ms. Finn is excessive and administrative in nature.

As an initial matter, Ms. Finn is encouraged to refrain from block billing in future cases. For example, on September 9, 2020, Ms. Finn billed 2.6 hours with the following explanation: "Pacer run, reviewed docket review of accuracy with invoice attorneys fees, checked dates, times in dbox, reviewed all entries." Fees App Ex. 1 at 5. Items such as checking dates are secretarial and are not compensable in the Vaccine Program. To receive credit for compensable line items, Ms. Finn is encouraged to avoid block billing in the future.

In this case, Ms. Finn billed approximately 80 hours for both attorney and paralegal time. In that span, Ms. Finn filed ten medical records, attended a single status conference, and filed a voluntary motion to dismiss. In my experience, this amount of time billed for this amount of work is excessive. As one example, I note that Ms. Finn billed one (1) hour for preparing the Motion to Dismiss on June 17, 2021. Fees App. Ex. 1 at 5.[8] However, this appears to be a nearly verbatim copy of the sample filing available on the Court's website.[9] Minimal changes to conform a sample filing to the instant case should not take an attorney of Ms. Finn's experience one full hour. In addition, Ms. Finn spent nearly ten hours preparing the instant Motion. *See* Fees App. Ex. 1 at 5.

---

[8] Ms. Finn also spent 1.1 hours preparing the motion to substitute counsel, another form available on the Court's website. *See* https://www.uscfc.uscourts.gov/sites/default/files/Corrected%20Motion%20for%20Substitution%20of%20Counsel.pdf.

[9] *Available at* https://www.uscfc.uscourts.gov/sites/default/files/Motion%20for%20Decision.pdf

In addition, many of Ms. Finn's billing entries are vague[10] or administrative[11] in nature. Billing for administrative tasks is not compensable. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.,* No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses).

Due to the number of entries that are excessive, vague, or administrative, I will reduce Ms. Finn's fee award by 35%, or $7,368.87.

Total attorneys' fees to be awarded: **$13,685.03**.

**C.  Reasonable Costs**

Petitioner requests a total of $558.65 in filing fees, medical records, and postage costs. I have reviewed these expenditures and find them to be reasonable.[12] I therefore award them in full.

I note that these costs include several payments made by Petitioner out of pocket, including the Court's filing fee ($400.00) and the cost of obtaining two medical records from Verisma ($51.92 and $66.60 respectively). Accordingly, this shall be awarded as a separate amount, in a check solely payable to Petitioner.

Total costs to be awarded: **$558.65**.[13]

---

[10] *See*, *e.g.*, entries on December 26, 2018 ("email from DOH Fielding re budget impasse re NOA"), May 26, 2020 ("Pacer run'), September 11, 2020 ("Ran Pacer").

[11] *See, e.g.*, entries on March 4, 2019 ("prepared docs mail to Court DOJ re NOS"), 6/20/2019 ("Downloaded pacers docs uploaded to Dbox in client's file; rebuilt entire file"), 6/21/2019 ("Reviewed all court docs, eliminated duplicates in dbox from Meghan…"); 6/24/2019 ("Labeled exhibits for filing and rescanned for scan/PDF, uploaded to ECF; w SOC").

[12] Petitioner did not include a receipt for $25.00 in costs for FedEx shipping, which Ms. Finn included in her billing records. I find this to be a reasonable price for FedEx and will reimburse it.

[13] Costs borne by Ms. Finn include: $25.00 (Fed Ex) + $6.00 (medical records) + $9.13 (medical records) = $40.13.

### VIII. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$13,725.16**, representing reimbursement of Petitioner's final attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Ms. Patricia Finn.

A lump sum in the amount of **$518.52**, representing reimbursement of Petitioner's costs in the form of a check payable to Petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with this decision.[14]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.